UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KARIM DIARRA, ) | |
| MINOR: DD, AD, AD, ND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:14-CV-145 |
| ) | |
| DONNY M. YOUNG and ) | |
| MISTY MILLER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

By memorandum and order dated December 22, 2014, the court granted the motion to dismiss filed by defendant Donny M. Young, concluding that Young is entitled to quasi-judicial immunity. The court denied, with leave to renew, the motion to dismiss filed by defendant Misty Miller. The court granted *pro se* plaintiff's motion to amend his complaint. By that amended complaint [doc. 24] (hereinafter, "complaint"), plaintiff added the State of Tennessee as a defendant and clarified that defendant Miller is being sued in her official capacity only "as an employee of the State of Tennessee." [Doc. 18, p.1].

Now before the court is the "Renewed Motion to Dismiss" [doc. 26] filed by defendants Miller and the State of Tennessee (collectively, "the State defendants"). The motion has been fully briefed by the parties [docs. 27, 32, 34, 35, 37, 39] and is ripe

for consideration. For the reasons that follow, the motion will be granted and this case will be dismissed in its entirety.

I.

*Relevant Legal Standards*

The State defendants move for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), and 12(b)(6) (failure to state a claim upon which relief can be granted). In substance, however, the motion is most directly brought under Rule 12(b)(1). *See, e.g., Loriz v. Connaughton*, 233 F. App'x 469, 474-75 (6th Cir. 2007) (A party invoking the *Rooker-Feldman* doctrine is challenging the federal court's subject-matter jurisdiction.). Further, a "Rule 12(b)(6) challenge becomes moot if [the] court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). When confronted with a Rule 12(b)(1) motion, the plaintiff bears the burden of proving jurisdiction. *See Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

Accompanying the State defendants' motion are two juvenile court orders. [Doc. 32]. Plaintiff has attached 18 pages of exhibits to his response brief. [Doc. 35]. In resolving a Rule 12(b)(1) motion, "the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction . . . ." *Nichols*, 318 F.3d at 677. Where, as in the present case, a 12(b)(1) motion factually attacks subject-matter jurisdiction, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist," and no presumption of

truthfulness attaches to the factual allegations of the complaint. *Ohio Nat'l Life Ins. Co. v. United States of America*, 922 F.2d 320, 325 (6th Cir. 1990).

II.

*Background*

Plaintiff's complaint is presented in narrative form and does not specify under which federal statute, if any, he seeks relief. By comparison, plaintiff's original complaint was submitted on a form captioned "Complaint for Violation of Civil Rights (42 U.S.C. Section 1983)."

According to the complaint, on March 28, 2013, plaintiff was ordered by the Knox County Juvenile Court to surrender his four minor children to the State of Tennessee Department of Children's Services ("DCS"). Defendants Young and Miller are identified as, respectively, the children's guardian ad litem and DCS case worker.

The complaint alleges that DCS held a family permanency plan meeting on April 23, 2013. At that meeting, according to the complaint, Miller stated that she and Young had decided not to place the children in the temporary care of a Ms. Kroumah as suggested by plaintiff based on the discriminatory reason that plaintiff and Ms. Kroumah are both African. The complaint further alleges that on March 6, 2013, Young expressed concern regarding the practice of female genital mutilation ("FGM") if plaintiff were to return with his children to plaintiff's native country of Mali. Plaintiff contends that, "The removal of my children [from his custody] was based on direct discriminatory allegation of Mr. Young [sic] statement to the juvenile court."

3

Plaintiff alleges that Young and Miller engaged in "falsification, discrimination and segregation" resulting in the institutionalization of his children for more than 90 days and an "intense emotional breakdown." The alleged "discriminatory behavior [led] to the sufferance [sic] of me and my children. The pain was unbearable when I was being asked when they can come home by my children. My son [sic] eczema was amplified out of proportion."

According to the complaint, plaintiff's children were returned to his custody on July 2, 2013. In his prayer for relief, plaintiff states in full, "I'm seeking justice for all the wrong doing caused by Donny young [sic] and the DCS and staff that my family had and still suffer."

## III.

*Eleventh Amendment Immunity*

As noted, *pro se* plaintiff's complaint does not identify the statute under which he brings this lawsuit. The original complaint cited 42 U.S.C. § 1983 but, in his current briefing, plaintiff now appears to suggest that he suing under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* [Docs. 34, 35].

Presuming this to be a § 1983 case, the State defendants move for dismissal on the basis of Eleventh Amendment immunity. Regarding plaintiff's citation to Title VI, the State defendants argue that plaintiff should not be allowed to amend his complaint through a response brief.

On the facts before it, this court need not expend scarce judicial resources deciding the degree of liberal construction to which plaintiff's complaint is entitled.

4

Similarly, the court need not determine the degree of Eleventh Amendment immunity to which the State defendants may be entitled. That is so because, as will be explained below, the *Rooker-Feldman* doctrine dictates that this court does not have subject-matter jurisdiction over this case, regardless of whether it is brought under Title VI or § 1983.

IV.

*Rooker-Feldman*

"Under the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction to engage in appellate review of state court proceedings or to adjudicate claims inextricably intertwined with issues decided in state court proceedings." *Loriz v. Connaughton*, 233 F. App'x 469, 474 (6th Cir. 2007) (citation and internal quotations omitted). "Only the United States Supreme Court may conduct federal review of state court proceedings." *Id.* at 474.

> The Sixth Circuit applies a two-part test to determine whether the *Rooker-Feldman* doctrine applies to bar an action. First, the federal claim must be inextricably intertwined with the state-court judgment. In other words, if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it, then the federal claim is inextricably intertwined with the state court judgment. The key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim. Second, there is no federal jurisdiction when the claim is a specific grievance that the law was invalidly – even unconstitutionally – applied in the plaintiff's particular case.

*Id.* (citations and quotations omitted).

The State defendants argue that the *Rooker-Feldman* doctrine applies in this case because plaintiff's claim is based on the removal of his children pursuant to a Knox County Juvenile Court order. Plaintiff responds that his complaint is not based on the

5

juvenile court order but instead stems from national-origin discrimination by Young and Miller.

The court has considered the parties' arguments, the complaint, and the evidence submitted. Having done so, the court concludes that it indeed lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

The court first returns to plaintiff's complaint. In his prayer for relief, plaintiff "seek[s] justice for all the wrong doing caused by Donny young [sic] and the DCS and staff that my family had and still suffer." As made clear in the first sentence of his complaint, those harms flow from (and are "inextricably intertwined with") the Knox County Juvenile Court's removal order. The specific harms alleged – the institutionalization of plaintiff's children, an "intense nervous breakdown," "sufferance," unbearable pain, and the worsening of his son's eczema – followed the juvenile court's removal order.

Similarly, the allegedly discriminatory conduct of Young and Miller is "inextricably intertwined" with the juvenile court order. As plaintiff acknowledges in his complaint,

> The removal of my children was based on direct discriminatory allegation of Mr. Young statement [sic] to the juvenile court. During the preliminary court hearing at the juvenile court I was asked question [sic] such as: Do you know any small African community that still performs FGM? What do you know about FGM? Did you apply for passport for the children here in the US or Mali?

[Doc. 24, p.2].

As exhibits to their motion, the State defendants have filed two orders of the Knox County Juvenile Court: the March 28, 2013 dependency and neglect order, and the May 15, 2013 preliminary hearing order. [Doc. 32]. The dependency and neglect order is largely handwritten and to some extent illegible. It is nonetheless clear that the juvenile court found probable cause to believe that the children were dependent, neglected, and "at imminent risk" because of a domestic assault between the parents *and* because of "concerns father may attempt to leave the USA with the children."

Next, the preliminary hearing order was entered after hearings which took place on May 1 and 7, 2013. According to the order, the juvenile court heard testimony on a number of matters including "the father's opinion of female genital mutilation (fgm) [and] the father's willingness to have his and/or the children's travel restricted so that he may not leave the country with the children." The juvenile court found "probable cause to believe that the children are dependent and neglected in the care of the father" for several reasons including "the father's consideration of leaving the United States with the children" and "that Mr. Diarra has not been particularly truthful about his plans for his children." A final judicial review was set for July 2, 2013. The juvenile court ordered that it would not consider returning the children to plaintiff on a trial basis until a number of conditions were satisfied. The first of those conditions was "restrictions preventing the child[ren] from leaving the United States with their father."

Plaintiff claims that Young and Miller acted discriminatorily by raising concerns over his national origin and FGM. The juvenile court orders quoted immediately above show that those issues were also a basis for the juvenile court's

7

rulings removing plaintiff's children from his home – the ultimate source of all injuries complained of in this case.  Young and Miller's concerns: (1) were part of the juvenile court dependency and neglect investigation process; (2) were shared by the state court itself; and (3) were a basis for the state court rulings at issue in this case. Unquestionably, Young and Miller's actions were "inextricably intertwined with" the state court's orders <u>and</u> plaintiff is complaining that the law was unconstitutionally applied in his state court case.

Plaintiff is "attempting to seek further review of the state court decisions by couching [his] Complaint in constitutional terms. *Rooker-Feldman* specifically prohibits this." *Loriz*, 233 F. App'x at 475.  For that reason, this court lacks subject-matter jurisdiction over plaintiff's suit.  The State defendants' "Renewed Motion to Dismiss" [doc. 26] must therefore be granted and this civil action must be dismissed.  An order consistent with this opinion will be entered.

**IT IS SO ORDERED.**

ENTER:

<u>    s/ Leon Jordan    </u>
United States District Judge